## W. J. Dillner Transfer Company, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued March 10, 1958. Before RHODES, P. J., WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT and GUNTHER, JJ., absent).

*G. Thomas Miller,* with him *Ernie Adamson, J. Paul Rupp,* and *Bailey & Rupp,* for appellant.

*Morris Mindlin,* Assistant Counsel, with him *Jack F. Aschinger,* Assistant Counsel, and *Thomas M. Kerrigan,* Acting Counsel, for Pennsylvania Public Utility Commission, appellee.

OPINION BY RHODES, P. J., June 11, 1958:

This appeal involves the general administrative authority of the Pennsylvania Public Utility Commission and its rule making powers.

On September 3, 1957, the Pennsylvania Public Utility Commission filed an order dismissing, without hearing, petition of W. J. Dillner Transfer Company and Weston Hauling, Inc., for modification and clarification of an order of July 15, 1941, establishing uniform rules and regulations and prescribing minimum rates for the transportation of heavy articles in the Commonwealth of Pennsylvania. The order was conditionally effective October 1, 1941. W. J. Dillner Transfer Company appeals and complains that the failure to grant a hearing on the petition violated its right of procedural due process and is contrary to the provisions of section 1007 of the Public Utility Law of 1937, 66 PS §1397.

On July 15, 1941, the commission, after a general investigation and consideration of proposed rules and rates submitted by a committee of heavy haulers, filed an order nisi at Minimum Rate Docket No. 7 containing proposed uniform rules and regulations and minimum rates for the transportation of heavy articles. The order of July 15, 1941, provided that, unless exceptions

were filed thereto by any interested party within fifteen days after service, the order would become final and effective as of October 1, 1941. Many exceptions were filed to the order. Upon receipt of the exceptions the commission postponed the effective date of the order pending its further consideration of the matter, and it so notified certain of the exceptants. There was no proceeding thereafter, and no action was taken other than the order was printed in the reports of the Public Utility Commission, 22 Pa. P.U.C. 540. Although printed, the order was never put into effect; and nothing further occurred in connection therewith until July, 1957, when Dillner and Weston filed the petition alleging that the order in its present state was uncertain and requesting a hearing to determine the extent to which the order should be modified and the extent to which the commission should sustain or reject the exceptions which were filed against the order. On September 3, 1957, the commission, upon consideration of the petition, filed its order denying the petition, rescinding the order of July 15, 1941, and terminating the proceeding at Minimum Rate Docket No. 7. This appeal by Dillner followed.

The contentions of Dillner are that the commission had no authority to dismiss its petition of July, 1957, without first affording it a hearing under the provisions of section 1007 of the Public Utility Law of 1937, 66 PS §1397; that the commission's order of September 3, 1957, rescinding the order of July 15, 1941, is therefore void; and that consequently said order of July 15, 1941, containing the proposed rules, regulations, and minimum rates is still in full force and effect.

Section 1007 of the Law, 66 PS §1397, provides: "The commission may, at any time, after notice and after opportunity to be heard as provided in the case of complaints, rescind or amend any order made by it."

The position taken by the commission is that a hearing under section 1007 was not required in this instance because the order of July 15, 1941, never became final and effective. It further argues that the procedure set forth in section 1007 is by reference made similar to that in complaint proceedings which may be dismissed without hearing if the commission concludes that a hearing is not necessary in the public interest. Section 1003, 66 PS §1393; *Latrobe Bus Service v. Pennsylvania Public Utility Commission,* 175 Pa. Superior Ct. 164, 169, 103 A. 2d 442.

We think it is too clear on this record for argument that the order of July 15, 1941, never became final and effective. Although there apparently was no formal order suspending the operation of the order nisi, the record shows that exceptions were filed, that the commission recognized the necessity for additional consideration of the proposed rules and regulations embodied in the order, and that the entire matter was postponed pending further proceedings. The absence of a formal order suspending the order of July 15, 1941, does not indicate that the order became final under the present circumstances. The order nisi specifically provided that it would not become final if exceptions were filed, and the filing of the exceptions operated to prevent its becoming effective on October 1, 1941. Moreover, it is apparent from the letters sent to the exceptants in 1941 that the commission had actually postponed the operation of the order. As we have said, the substance and not the form of the commission's action is controlling. *West Penn Power Company v. Pennsylvania Public Utility Commission,* 174 Pa. Superior Ct. 123, 129, 100 A. 2d 110. Therefore, since there was no order actually in effect, the provisions of section 1007 concerning a hearing before rescission thereof could not begin to be operative.

Manifestly Dillner had grave doubt as to the efficacy of the order of July 15, 1941. This is evident from its petition filed with the commission in July, 1957, which refers to the order as having an "uncertain status." The mere formality of striking the order nisi from the records was not such a rescission or amendment of an order within the meaning of section 1007, 66 PS §1397, that notice and a hearing would be required.

But granting that the order of July 15, 1941, could be considered a final promulgation of the commission, it is not such an order requiring compliance with the procedural due process requirements set forth in section 1007 of the Law, 66 PS §1397. The order in effect sets forth that after an investigation and consultation with heavy haulers the commission saw fit in its rule making capacity to prescribe certain uniform rules and regulations and minimum rates applicable to the transportation of heavy articles. As we view it, this function is to be distinguished from commission action which is of a quasi judicial nature, such as the determination of the public interest affecting the rights of an individual complainant or applicant. By section 901 of the Law, 66 PS §1341, the commission is given general administrative power and authority to supervise and regulate all public utilities doing business within this Commonwealth; and it may make or promulgate such regulations not inconsistent with the Law as may be necessary or proper in the exercise of its powers or for the performance of its duties under the Law. See *Duquesne Light Company v. Pennsylvania Public Utility Commission*, 164 Pa. Superior Ct. 166, 173, 63 A. 2d 466. In addition, by section 902, 66 PS §1342, the commission has full power and authority to rescind or modify "any such regulations or orders." It is sound policy that the requirement of notice and hearing under

section 1007, 66 PS §1397, is not restricted to the rescission or amendment of orders in cases of complaints, and that it shall apply to other proceedings as well. *Paradise v. Pennsylvania Public Utility Commission,* 184 Pa. Superior Ct. 8, 12, 132 A. 2d 754. But there is no justification to extend section 1007 to orders of the commission promulgating rules and regulations of general application for all, or a particular segment of, the utilities furnishing service within the Commonwealth. The order of July 15, 1941, if it had become final, would have been of general application to all heavy haulers, and it would not have affected the individual rights of Dillner as distinguished from other heavy haulers; it would be burdensome and impracticable to afford every such utility a hearing before promulgating, rescinding, or amending such rules and regulations. *United States v. Berwind-White Coal Mining Company,* 274 U.S. 564, 583, 47 S. Ct. 727, 71 L. Ed. 1204, 1217. See, also, *Bi-Metallic Investment Company v. State Board of Equalization,* 239 U.S. 441, 445, 36 S. Ct. 141, 60 L. Ed. 372, 375.

The power of the commission to make regulations under section 901 of the Law, 66 PS §1341, is not without limitation. The purpose of such regulations is to carry into effect the will of the Legislature as expressed by the statute, but such regulations are subject to judicial review. *Lancaster Tranportation Company v. Pennsylvania Public Utility Commission,* 169 Pa. Superior Ct. 284, 295, 82 A. 2d 291. The commission may not by promulgating a general order or general regulation avoid the necessity of requiring substantial evidence to support its action in a particular case (*Noerr Motor Freight, Inc. v. Pennsylvania Public Utility Commission,* 181 Pa. Superior Ct. 322, 333-336, 124 A. 2d 393) ; it may not by such general order or general regulation adopt a policy which

may be used as a substitute for evidence in a proceeding before it (*Aizen v. Pennsylvania Public Utility Commission*, 163 Pa. Superior Ct. 305, 316, 60 A. 2d 443); and it may not avoid the constitutional requirement of due process in a particular proceeding by reference to a general rule or regulation setting forth some policy (*Erie Lighting Company v. Pennsylvania Public Utility Commission*, 131 Pa. Superior Ct. 190, 193-196, 198 A. 901). Within the limitations of the Public Utility Law and in furtherance of it, the commission may promulgate general rules and regulations governing the conduct of utilities or a class of utilities and such general rule or regulation may ordinarily be rescinded or modified without prior notice and hearing under section 1007 of the Law, 66 PS §1397. See *United States v. Berwind-White Coal Mining Company*, supra, 274 U.S. 564, 583, 47 S. Ct. 727, 71 L. Ed. 1204, 1217.

Furthermore, it would appear that the order of July 15, 1941, was initially void with respect to and in so far as it attempted to fix a minimum rate to be charged by all heavy haulers. See *Scranton-Spring Brook Water Service Company v. Public Service Commission*, 119 Pa. Superior Ct. 117, 146, 181 A. 77; *Pennsylvania Power & Light Company v. Public Service Commission*, 128 Pa. Superior Ct. 195, 213, 193 A. 427.[1] The provisions in the Law granting the commission certain authority to fix minimum rates are sections 309 and 810, 66 PS §§1149, 1310.[2]

We are obliged to conclude that the order nisi of July 15, 1941, never became effective, and that its formal rescission by the commission could not possibly

---

[1] See, also, *Pittsburgh v. Pennsylvania Public Utility Commission*, 182 Pa. Superior Ct. 376, 386, 387, 126 A. 2d 777.

[2] Cf. section 305 of the Law, 66 PS §1145.

be within the purview of section 1007 of the Law, 66 PS §1397.

As a practical matter the order of July 15, 1941, contained provisions which both Dillner and the commission recognized were obsolete and inapplicable to present conditions, necessitating complete and extensive reconsideration before effective promulgation. The commission was of the opinion that any reconsideration of the matter should be by an entirely new and independent proceeding unburdened by the indefinite history and record of the prior proceeding. The commission terminated the prior proceeding without prejudice to institute another proceeding for the accomplishment of the purposes originally contemplated should the same become necessary or desirable.

The order of the commission is affirmed; costs to be paid by appellant.